[Crim. No. 4103. Second Dist., Div. One. Aug. 15, 1947.]

THE PEOPLE, Respondent, v. ALEX L. MILTENBERGER, Appellant.

A. Maxson Smith for Appellant.

Fred N. Howser, Attorney General, and Alberta Gattone, Deputy Attorney General, for Respondent.

DORAN, J.—Defendant was charged in two counts of an information with the crime of robbery and burglary. Declared guilty by a jury, this appeal is from the judgment that followed and from an order denying a motion for a new trial.

It is contended on appeal that the evidence is insufficient; that certain alleged misconduct of the district attorney was prejudicial and that certain instructions were prejudicial.

The record reveals that three armed bandits wearing dark glasses and handkerchief masks entered Charles Brown's room in the Sterling Hotel and while one stood guard over Brown the other two searched the chiffonier and "rummaged around in the closet." They obtained eighty or ninety dollars. Incidentally, one of the rooms of Brown's apartment was used as an office; this was also entered. Brown testified, "After I got out there, (meaning the office) Betty Hudson, the manager and housekeeper, she was on the lower landing of the stairs, cleaning the stairs.

"Q. That's between the first and second floor? A. Yes, it is the first landing. So then I said, 'Betty' and she looked up and saw these three men masked and let out a scream. Two of them ran down and the next one ran down, so I immediately went back into the apartment, went out on my balcony there and gave an alarm and hollered, 'Police, help' and one thing and another, good and loud. Everybody heard me on the street. Then I proceeded to call the Police Department over the telephone.

"Q. You say you went out on the balcony? A. I did.

"Q. What did you do out there? A. Gave an alarm and hollered 'Police,' and so on.

"Q. Did you see anyone in the street at that time? A. Yes, there were quite a few people on the street."

Richard Pingle, a 14-year-old boy, happened to be passing the hotel on a bicycle when Brown gave the alarm. Richard saw the three men in front of the hotel and in that connection testified, "they started to walking and when they got on Speedway they started to running, . . . I just turned my bicycle around and started trailing them. . . . Well, they ran up on Speedway and then they turned and went through the parking lot, through there, and I just kept on going on Speedway and turned around the block. I went around the block and trailed them." The three men separated, Richard continued to follow one of them and with regard to the latter testified as follows:

"Q. Well, what did he do when he got to the end of that street, Richard? A. Oh, when he got to the end he went around there and threw his gun up on the chicken coop there.

"THE COURT: Threw his gun up on the chicken coop. Is that what you said? A. Yes.

"Q. And then what happened? A. Well, the cops stopped him and they said, 'Is that the man?' and I told them 'Yes,' and they looked to see if he had a gun and I showed him where it was, and that's all.

"Q. How was the man dressed, if you remember, Richard? A. Brown, brown suit.

"Q. Now, at any time after you first saw this man in the brown suit, which you say was at the corner of Speedway and Windward near the hotel, from that time until the police placed him under arrest, did you at any time lose sight of that particular man in the brown suit? A. No.

"Q. You kept him in sight at all times; is that right? A. Yes.

"Q. Can you identify the man that you saw that day in this courtroom? A. Yes.

. . . . . . . . . . . . .

"Q. Now, when you first saw this man on Windward, did you notice anything unusual about his face or dress? A. I don't know what you mean.

"Q. Did he have anything on his face? A. Yes.

"Q. What did he have on his face? A. Handkerchief on his face.

"Q. A handkerchief. And did he have that handkerchief on his face all the time that you were following him? A. Yes, but he got—— he was on Main Street when he took it off.

"Q. He was on Main Street? A. Yes, he stopped right

there, if that's Main Street (pointing), but I knew he took it off. I saw him.''

Appellant's contention that the evidence is insufficient is without merit.

The contention that the district attorney was guilty of prejudicial misconduct has reference to a motion to strike and the comments in connection therewith. It is also without merit.

The objection to the instructions relates to an instruction on the subject of flight and accusatory statements. The instructions referred to were in the customary form and in the light of the record were proper.

There being no errors, the judgment and the order denying a motion for a new trial both are, and each is, affirmed.

York, P. J., and White, J., concurred.